IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

ZINA M. ROBINSON,
   Plaintiff,

vs.           Case No.: 5:12cv352/MMP/EMT

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,
   Defendant.
_____/

## REPORT AND RECOMMENDATION

   This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court relating to review of administrative determinations under the Social Security Act ("Act") and related statutes, 42 U.S.C. § 401, *et seq.*  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401–34, and for Supplemental Security Income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381–83.

   Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

I.  PROCEDURAL HISTORY

   On January 13, 2009, Plaintiff filed applications for DIB and SSI, and in both applications she alleged disability beginning July 6, 2006 (tr. 11).[1]  Her applications were denied initially and

---

[1] All references to "tr." refer to the transcript of Social Security Administration record filed on January 14, 2013 (docs. 10–12).  Moreover, the page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system.

on reconsideration, and thereafter Plaintiff requested a hearing before an administrative law judge ("ALJ"). A hearing was held on February 7, 2011, and on February 17, 2011, the ALJ issued a decision in which he found Plaintiff "not disabled," as defined under the Act, at any time through the date of his decision (tr. 11–18). On August 23, 2012, the Appeals Council denied Plaintiff's request for review (tr. 1–3). Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007). This appeal followed.

## II. FINDINGS OF THE ALJ

In his written decision dated February 17, 2011, the ALJ made several findings relative to the issues raised in this appeal (*see* tr. 11–18):

1) Plaintiff meets the insured status requirements of the Act through June 30, 2012.[2]

2) Plaintiff has not engaged in substantial gainful activity since July 6, 2006, the date she alleges she became disabled.

3) Plaintiff has the following severe impairment: lower back pain secondary to degenerative disc disease ("DDD").

4) Plaintiff has no impairment or combination thereof that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5) Plaintiff has the residual functional capacity ("RFC") to perform a full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b).[3]

6) Plaintiff is capable of performing her past relevant work as a housekeeper, pharmacy technician, and janitor, because this work does not require the performance of work-related activities precluded by her RFC.

---

[2] Thus, the time frame relevant to Plaintiff's claim for DIB is July 6, 2006 (date of alleged onset), through February 17, 2011 (date of ALJ's decision), even though Plaintiff was insured through June 2012. The time frame relevant to her claim for SSI is January 13, 2009 (the date she applied for SSI) through February 17, 2011. *See* Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (indicating that SSI claimant becomes eligible to receive benefits in the first month in which she is both disabled and has an SSI application on file). The court's review in this case will therefore focus, generally, on the evidence that relates to Plaintiff's condition between July 2006 and February 2011.

[3] Light work is defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

7) Because Plaintiff can perform her past relevant work, she was not under a disability, as defined in the Act, between July 6, 2006, and February 17, 2011.

III.    STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards.  Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles."  Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991).  As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge, 150 F.3d at 1322; Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).  Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439.  The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do her previous work, "but cannot,

considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g),[4] the Commissioner analyzes a disability claim in five steps:

1.      If the claimant is performing substantial gainful activity, she is not disabled.

2.      If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3.      If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.      If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5.      Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her RFC and vocational factors, she is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work.  20 C.F.R. § 404.1512.  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must then prove she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

---

[4] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI, but separate, parallel statutes and regulations exist for DIB and SSI claims (*see* 20 C.F.R. §§ 404, 416).  Therefore, hereinafter, citations in this Report should be considered to refer to the appropriate parallel provision.  The same applies to citations of statutes or regulations found in quoted court decisions.

IV.    PLAINTIFF'S PERSONAL, EMPLOYMENT AND MEDICAL HISTORY

   A.    Personal History

   Plaintiff was born in 1963, and was forty-seven years of age on the day the ALJ issued his decision (tr. 8, 120).  She completed high school, was single at the time of her hearing, and has six children with whom she lives or has lived (*see* tr. 415 (Plaintiff's report in January 2009 that she lives with all six children); tr. 46 (Plaintiff's testimony in February 2011 that she lives with only one of her children)).  Her past relevant work includes work as a pharmacy technician, housekeeper, and janitor (*see, e.g.*, tr. 212).[5]  She was released from her most recent full-time job (as a pharmacy technician) in July 2006, and she testified that she had not "work[ed] since then" (tr. 33–34, 415).  She explained that she lost her job "because of having to be gone for [physical] therapy, my bosses did not work with me as far as reducing my hours, giving me different duties or allowing me to miss any work" (tr. 162).[6]  She described her back pain as constant and severe (i.e., an eight to ten on a ten-point scale ("8–10/10") without medication and an 8/10 with the use of Norco), although she also noted that with the use of medication she was "pretty well much stable" (tr. 37–40).  Plaintiff further indicated that the pain occasionally goes down her left leg and causes numbness and tingling (tr. 37).  Finally, she claimed to be extremely limited in her ability to sit, walk, lift anything, raise her arms, extend her hands, perform household chores, engage in social activities and hobbies, drive, work, or (essentially) perform any physical activity whatsoever other than boil a pot of lima beans and occasionally visit her sister or shop (*see* tr. 40–41, 43, 47–49, 51–54).[7]

---

   [5] A vocational expert ("VE") testified at Plaintiff's hearing.  After listening to Plaintiff's testimony, which included a description of her past relevant work, the VE characterized that work as follows: pharmacy technician (light exertional work, as defined by the Dictionary of Occupational Titles ("DOT") and as performed by Plaintiff); housekeeper (light, as defined by the DOT and as performed by Plaintiff); and janitor (medium, as defined by the DOT but light as performed by Plaintiff) (tr. 57–60; *see also* tr. 212).  Thus, in light of the ALJ's RFC determination, the VE opined that Plaintiff could return to the pharmacy and housekeeping jobs without qualification and to the janitorial job as she previously performed it (tr. 60–61).

   [6] Although Plaintiff testified she had not worked since 2006, the record indicates that she worked as a pharmacy technician from April 2007 through June 2007 (*see, e.g.*, tr. 136, 148–49), which work the Commissioner characterized as an "unsuccessful work attempt" that did not constitute substantial gainful employment (*see* tr. 13, 154).

   [7] During Plaintiff's hearing, the ALJ noted that a treatment record reflects a report by Plaintiff to one of her physicians, made November 3, 2010, that she wished to "go back to work cleaning toilets," and the ALJ asked Plaintiff whether she made this statement (tr. 35, 441).  Plaintiff testified that she made no such statement to the physician (tr. 35).

B.     Relevant Medical History

2006

On June 21, 2006, Plaintiff picked up a box at work and immediately felt pain in her lower back.  The next day she presented to an emergency room ("ER"), where she received a Demerol shot and a prescription for Lortab, which—according to Plaintiff—"help[ed] for a while" (tr. 292).

A scan of Plaintiff's lumbar spine was obtained on July 3, 2006 (the record does not indicate the precise nature of the scan, for example, whether it was an x-ray or magnetic resonance imaging ("MRI"), but it appears it was a MRI (*see* tr. 252), and thus the court will refer to it as such).  The MRI showed "some disc protrusion at [illegible, but presumably L5]-S1, mildly effacing the thecal sac, [with] no nerve root compression," a mild bulging disc at L4-5, and a moderately sized annular tear at L5-S1 (*id.*).  An electromyogram and nerve conduction velocity study ("EMG/NCV") of the right lower extremity was normal (*id.*).  On or about July 19, 2006, Douglas L. Stringer, M.D., examined Plaintiff and released her for work on July 24, 2006, but he limited her to half-days initially, with no lifting more than ten pounds for one week, after which (i.e., on or about July 31, 2006) Plaintiff would be permitted to work eight-hour days (tr. 250).

Plaintiff participated in physical therapy ("PT") in or about the month of July 2006, for lower back and right leg pain[8] (*see* tr. 219–33).  She attended nine of twelve scheduled visits (she cancelled one visit and failed to show for two others) and was discharged due to inconsistent attendance (tr. 217).  In a progress report dated August 31, 2006, Plaintiff's physical therapist stated that she had improved with therapy (*see id.*).  More specifically, the therapist noted that Plaintiff demonstrated "improvement in lumbar [range of motion] to 50% flexion, 50% extension, and 50% SB," and her "[t]ransitional movements and gait [were] more normalized and less antalgic" (*id.*; *see also* tr. 231, 223 (PT records noting that Plaintiff was "moving much better," and her gait was "noticeably improve[d]"); tr. 228 (PT record noting Plaintiff's reported pain as a 3/10 on July 10, which was significantly lower that the 10/10 she reported at her first PT visit (*see* tr. 232))).  The therapist also noted that Plaintiff had returned to work and was working four hours a day (tr. 217).

---

[8] As noted *supra*, Plaintiff testified that her back pain sometimes goes down into her <u>left</u> leg and, as will be seen *infra*, the most recent treatment records reflect similar complaints, but the PT records reflect complaints of pain going down into Plaintiffs <u>right</u> leg, as do some of the intervening treatment records.

Also in August 2006, Dr. Stringer noted that although Plaintiff reported pain with straight leg raising tests, there was no radicular component (tr. 251).  He also observed that Plaintiff had normal upper extremity strength, lower extremity strength, sensation, and deep tendon reflexes, although she displayed a "limping gait" (tr. 252).  After interviewing Plaintiff, examining her, and reviewing the lumbar MRI from July 2006, Dr. Stringer assessed lumbar disc disease with low back pain and severe lumbar facet pain but no evidence of nerve root compression (*id.*).  Between approximately August and December 2006, Plaintiff received lumbar paravertebral nerve blocks and facet joint injections from Dr. Stringer, and she was prescribed Lortab following these procedures (*see* tr. 237–38, 247, 249, 253, 264, 288).

2007

Plaintiff received additional nerve blocks and facet injections in January and February 2007, as well as short-term prescriptions for Lortab (*see, e.g.*, 274, 280).  Following the January injections, Plaintiff reported that her back pain had decreased from a 9/10 to a 2/10 (tr. 274).  Following the February injections, Merle P. Stringer, M.D., noted that Plaintiff's pain had decreased and her range of motion had increased (tr. 275).[9]  On December 12 2007, Plaintiff presented to E. Jacob, M.D., a neurologist, and reported severe back pain that radiated into both lower extremities (tr. 328).  After conducting a physical examination, Dr. Jacob was concerned that some radiculopathy may be present, so he ordered a lumbar MRI, as well as an EMG/NCV (tr. 330).  The lumbar MRI was obtained on December 28, 2007, and it showed minimal degenerative changes at L5-S1 with a small annual tear but no evidence of disc herniation or nerve root compression (*see* tr. 327, 335).

2008

On February 7, 2008, Todd Crawford, M.D., with Spinal Associates, saw Plaintiff "in consultation for Vocational Rehabilitation" (tr. 337).  Plaintiff presented with complaints of pain and burning in the lower back and pain in the left leg (*id.*).  Dr. Crawford conducted a physical

---

[9] Dr. Merle Stringer also explained that nerve blocks are administered to treat the "acute component" of pain, while facet injections are administered to treat the "deep component" of pain (tr. 274).  The court notes that neurologists Douglas Stringer, M.D., and Merle Stringer, M.D.—who work in the same facility (*see, e.g.*, tr. 262)—each treated Plaintiff during the relevant period (it also appears that their records, some of which are illegible, are co-mingled).  For these reasons, the court cannot definitively distinguish between the two physicians in reviewing all of their treatment records.  For the sake of simplicity, the court will hereafter refer to these physicians as one individual, "Dr. Stringer."

examination and reviewed the December 2007 MRI—which, he stated, revealed only "mild" findings—and thereafter he assessed "low back pain, most likely myofascial" (tr. 335). Dr. Crawford noted that Plaintiff was not a surgical candidate and that "her best option is physical reconditioning with strengthening, flexibility and walking" (*id.*). He encouraged Plaintiff to walk every day and perform the exercises she learned in PT, and he opined that her pain would likely improve if she followed his recommendations (*id.*). Dr. Crawford scheduled no follow-up visit with Plaintiff but advised her he would see her on an "as needed" basis (tr. 334).

On March 18, 2008, Plaintiff presented to the Community Health Center of Bay County, Florida ("CHC") with complaints of lower back pain (tr. 370). She was prescribed Flexeril and Voltaren (*id.*).

Plaintiff returned to Dr. Crawford on July 31, 2008, and complained of back pain and tingling in the left leg (tr. 333). Dr. Crawford essentially reiterated his opinions regarding Plaintiff's candidacy for surgery and need to be physically active (*id.*). Additionally, after Plaintiff described her job duties as a pharmacy technician, Dr. Crawford opined that she could return to that work (*id.*). Plaintiff returned to Spinal Associates on December 18, 2008, and saw Michael X. Rohan, Jr., D.O. (*see* tr. 332). Plaintiff had lost over twenty pounds since her first visit with Dr. Crawford in February 2008 (*see* tr. 332, 336). She again complained of back pain, which she rated as a 7/10, and she stated that the pain radiated into her right leg (tr. 332). She also reported that she tried to return to work but was unable to work (*id.*). Dr. Rohan recommended an updated lumbar MRI, which Plaintiff obtained the following day. The MRI revealed mild left neuroforaminal stenosis at L4-5 secondary to disk protrusion and an annular tear at L5-S1, but no nerve root impingement was seen, no significant spinal stenosis was evident, and the remaining levels of the lumbar spine were normal (tr. 295, 326). Plaintiff returned to Dr. Rohan on December 30, 2008, and reported that her pain was constant, and at a 5/10 (tr. 332). After reviewing the MRI, Dr. Rohan assessed L5-S1 annular tear and stated that Plaintiff "may need surgery" (*id.*).

2009

On January 8, 2009, Plaintiff reported to the office of Aaron J. Shores, M.D., a pain management specialist, and complained of lower back pain radiating down the right leg to the foot that started on June 21, 2006, after she picked up a box at work (tr. 292). She told Dr. Shores that

neither the injections administered by Dr. Stringer, nor the PT, had "helped her" (*id.*).  A comprehensive physical examination was largely unremarkable, with the exception of some lumbar tenderness, and it resulted in Dr. Shores' ruling out neurologic symptoms (*see* tr. 294–95).  After conducting this examination and reviewing the December 2008 MRI, Dr. Shores assessed chronic low back pain, possibly discogenic in nature, and he noted that Plaintiff may never be completely pain free (tr. 295).  He gave Plaintiff various prescriptions including Norco and recommended that she undergo a lumbar discogram to determine the origin of her pain (*id.*).  On January 28, 2009, Dr. Shores completed a questionnaire and indicated that Plaintiff had DDD with gait disturbance, chronic pain, radiculopathy, soft tissue injury, and limited range of motion (without specifics), but that Plaintiff's grip strength and lower extremity strength were full at 5/5 (tr. 304).  Dr. Shores also opined that Plaintiff did not require a hand-held device to ambulate and was capable of performing fine or gross manipulation on a sustained basis (*id.*).  Plaintiff returned to Dr. Shores on February 2, 2009, and rated her back pain as a 6/10 (tr. 398). Dr. Shores renewed her Norco prescription and indicated that a diagnostic discogram would be scheduled in order to confirm (or, presumably, rule out) discogenic pain (tr. 398–99).

On February 9, 2009, Plaintiff underwent a lumbar spine computerized tomography ("CT") scan (tr. 324).  The impression was:  (1) "[a]t L5-S1 contrast extravasates from the nucleus pulposus in the midline into a small central disk bulge which does not result in significant neural foraminal narrowing or spinal canal stenosis"; and (2) "[r]adial tears . . . at L3-4 and L4-5 [and, at] L4-5 a right posterolateral disk bulge narrow [sic] the right neural foramen and contacts [sic] the exiting rightsided L4 spinal nerve" (*id.*).  The same day, Plaintiff underwent a lumbar discogram, which recreated concordant disk pain at L4-5 and L5-S1 but yielded negative results at L3-4 (tr. 426–27).

Plaintiff returned to Dr. Rohan on March 4, 2009, and rated her lower back pain as a  4/10 (tr. 317).  She noted that the pain was aggravated with standing too long, twisting, bending, and lifting but stated that the pain was relieved with medications (*id.*).  After examining Plaintiff and reviewing the discogram results, Dr. Rohan assessed discogenic back pain (*id.*).  He discussed treatment options with Plaintiff, including surgical options, and he advised Plaintiff that he could not guarantee a reduction in her pain following surgery, but "on average she could expect a 50% reduction in her back pain" (*id.*).  He also opined that Plaintiff was "100% disabled from any

meaningful employment" (*id.*). Similarly, in a later dated March 5, 2009, Dr. Rohan stated "I feel that [Plaintiff] is 100% disabled from an employment perspective" (tr. 341).

Plaintiff returned to Dr. Shores on April 9, 2009, and rated her back pain as a 6/10 (tr. 396). Dr. Shores conducted a physical examination and noted, with regard to the musculoskeletal portion of the examination, that "some of [Plaintiff's] pain responses [were] out of proportion to the examination" (*id.*). He assessed chronic low back pain, discogenic in nature, secondary to L4-5 and L5-S1 disk pain; symptom magnification; and myofascial pain syndrome (*id.*). He renewed Plaintiff's Norco prescriptions, scheduled an injection, and referred Plaintiff for PT (two times a week for four weeks) (tr. 397). The injection—a L5-S1 interlaminar epidural steroid injection ("ESI")—was administered on April 24, 2009 (tr. 410). Plaintiff returned to Dr. Shores on May 11, 2009, and stated that her pain was "50% improved" and that she had decreased her Norco usage (tr. 394–95). Dr. Shores renewed the Norco prescription but lowered the dose (tr. 395). Plaintiff returned on May 21, 2009, and told Dr. Shores she was "50% to 60% improved and using less Norco (tr. 393). Thereafter, Plaintiff cancelled two scheduled ESI procedures (*see* tr. 390, 409). Plaintiff next reported to Dr. Shores on August 5, 2009 (tr. 380–81). She stated she had not been taking Norco for several months or any pain medication in several weeks and that her pain returned to a 7/10 (tr. 380). Dr. Shores prescribed Norco, scheduled an ESI, and scheduled an EMG/NCV of the bilateral upper extremities (tr. 381). On August 19, 2009, Plaintiff underwent an L5-S1 interlaminar ESI, and in early September 2009, she reported that the injection provided 70–80 % relief for about a week (tr. 378, 388–89). She informed Dr. Shores she was taking no more than one Norco tablet a day and that on some days she took none (tr. 378). In late September Plaintiff stated that she had been using one tablet of Norco per day, "and was actually doing quite well, to the point that she was able to stop the Norco," although she had a "pain flare" that prompted an ER visit, and she rated her current pain level as an 8/10 (tr. 376). Dr. Shores scheduled an ESI and renewed the Norco (tr. 377).

Plaintiff again saw Dr. Shores in October and December 2009, and he administered interlaminar ESIs (tr. 384–87). Also in late 2009, Plaintiff returned to the CHC with complaints of lower back pain (*see* tr. 357). A physical examination, which included an examination of Plaintiff's extremities, was entirely within normal limits, and Plaintiff was assessed with back pain (tr. 358).

The CHC notes reflect that Plaintiff was under Dr. Shore's care and, it appears, that CHC staff deferred treatment decisions to Dr. Shores (*see id.*).[10]

<u>2010</u>

On January 6, 2010, Dr. Shores administered facet joint diagnostic medial branch blocks at various levels of the spine and a confirmatory injection (*see* tr. 382, 375), and on January 14, 2010, Plaintiff reported 20% relief after the blocks/injection (tr. 372, 383). Dr. Shores concluded that Plaintiff was running out of options, as she was not a good surgical candidate, and he asked Plaintiff to consider the use of a spinal cord stimulator (tr. 372–73). Plaintiff returned to Dr. Shores on March 17, 2010, and rated her pain as a 6/10 (tr. 437). Dr. Shores noted that Plaintiff "only takes [her] medication when [the pain] gets really bad," and when she does she takes the Norco twice daily; he also noted Plaintiff's report that the "medication does help" (tr. 437–38). Dr. Shores again discussed with Plaintiff conservative treatment measures, including the use of a spinal cord stimulator, and he renewed the Norco and advised Plaintiff to return the following month (tr. 438),

Plaintiff continued treatment with Dr. Shores and his partner Robert Joseph, M.D., between April and November 2010. She rated her back pain between a 7/10 and a 9/10 (tr. 433, 435, 441, 443); she reported that the pain radiated into the left leg and foot (tr. 435, 443); and she stated that medication "helped" the pain (tr. 429, 431, 433, 436, 442, 444).[11] Additionally, on May 21, 2010, Plaintiff received a lumbar ESI (tr. 439–40), which—she reported in June 2010—resulted in a 50% improvement in her pain (tr. 431). In or about June 2010, Dr. Shores reiterated his opinion that he did not believe Plaintiff was a surgical candidate, but he referred Plaintiff to a spinal surgeon for a second opinion (*id.*). Dr. Joseph's notes from July 2010 reflect that the spinal surgeon, "Dr. Desilva," essentially concurred with the opinion of Dr. Shores (*see id.*). Dr. Joseph's notes also reflect Plaintiff's report that the May 21 ESI was "still helping" and that she was not sure that she wanted to use the spinal cord stimulator (tr. 429). October 4, 2010, Plaintiff reported burning pain

---

[10] The CHC notes also reflect visits by Plaintiff between March 2008 and November 2009 for check-ups and treatment of various ailments other than back pain (tr. 353–70). She indicated on only one of these visits that she was taking pain medication (tr. 359).

[11] Plaintiff's reports regarding the efficacy of her pain medication varied at times (e.g., during one visit she stated her pain medication was not lasting long enough and during another she stated she could do "without the medications at all" (*see* tr. 429, 443)).

across her upper back that radiated into her left lower extremity that was worse with "sitting straight up" (tr. 443). She stated she had a new granddaughter and had been going back and forth to the hospital in Pensacola (presumably from the Panama City area) (tr. 443). An examination revealed a non-antalgic gait, upright station, full motor tone and strength, negative straight leg raising tests, and lumbar tenderness (tr. 443–44). On November 3, 2010, Plaintiff's final visit with a health practitioner that is documented in the record, Plaintiff reported that: "She does not want surgery. She does not want the spinal cord stimulator. She does not do any stretches or exercise. She uses the [CHC] for her primary care." (tr. 441). Plaintiff also stated that she would like to go back to work and that she would like to do so even if was to "clean[] toilets" (*id.*). Dr. Joseph conducted a physical examination which revealed a slow but non-antalgic gait, upright station, mild tenderness to palpation of the lumbar spine, positive forward bending, negative straight leg raising tests, no pain with extension, full strength and motor tone, and symmetrical reflexes (*id.*). Dr. Joseph noted:

> We had tried the radiofrequency, the DMBBs [branch blocks], the injections and physical therapy along with L[umbar]ESIs which she said did not help. She does not want to try the spinal cord stimulator. This does not leave much else but pain pills and as such, it is not the appropriate treatment as she is young and she has a fixable problem.

(tr. 442). He further noted, "She has been out of work for three years as a pharmacy tech [but] can sit and stand. Cleaning the toilets require total bending over and being on your hands and knees and with her education and training it is not something she should be thinking of doing. She needs to decide what she wants to do." (*id.*). He discussed with Plaintiff the continuation of conservative treatment options and renewed her medications (*id.*).

C.      Other Information Within Plaintiff's Claim File

On April 15, 2009, Harry Beecham, M.D., a non-examining agency physician, completed a physical RFC assessment form after reviewing the most recent lumbar imaging reports and other pertinent information in Plaintiff's claims file (tr. 342–49). He opined that Plaintiff can occasionally lift or carry twenty pounds, frequently lift or carry ten pounds, and stand, walk, or sit about six hours in an eight-hour workday (tr. 343). He further opined that Plaintiff has an unlimited ability to push or pull, subject to the foregoing weight restrictions, but has no other restrictions or limitations (*see* tr. 343–46). Finally, Dr. Beecham opined that "some [of Plaintiff's] allegations and symptoms . . . appear . . . to be disproportionate to the expected severity and duration that would be expected on

the basis of [Plaintiff's] medically determinable impairment[]" (namely, lumbar DDD) (*see* tr. 342, 347). Also in early 2009, another non-examining agency specialist rendered nearly identical conclusions as to Plaintiff's RFC and credibility (*see* tr. 305–12).

V.    DISCUSSION

In the memorandum in support of her complaint, Plaintiff twice identifies the issues in this appeal as follows:

> **The Plaintiff is unable to perform light work based on her degenerative disc condition. Although the Plaintiff may have emphasized her physical problems in the testimony she has objective medical evidence that supports the level of pain that she assserts [sic] and may have misunderstood the questions presented at the hearing[.]**

(doc. 18 at 2, 7). It thus appears that Plaintiff challenges the ALJ's RFC determination and credibility findings, and that these are her only challenges. In the body of the memorandum, however, Plaintiff appears to additionally challenge the ALJ's rejection of the opinion of Dr. Rohan that Plaintiff is "100% disabled" (*see id.* at 7). Although Plaintiff is represented by counsel, and her counsel has an obligation to properly frame and brief the issues, the undersigned will nevertheless liberally construe her memorandum as asserting three claims for relief, and will discuss those claims in the following order: Dr. Rohan's opinion, Plaintiff's credibility, and the RFC determination.

A.    The Opinion of Dr. Rohan

As detailed *supra*, Plaintiff first presented to Dr. Rohan on December 18, 2008, almost thirty months after the date she alleges she became disabled. Dr. Rohan ordered an updated lumbar MRI, and after reviewing the results of the MRI he opined, on December 30, 2008, that Plaintiff had an annular tear and possibly needed surgery. At Plaintiff's third visit with Dr. Rohan, on March 4, 2009, Dr. Rohan opined that Plaintiff was "100% disabled," which opinion he repeated the following day. The ALJ rejected Dr. Rohan's opinion of disability, and Plaintiff (apparently) asserts error in this regard.

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See* <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1439-1441 (11th Cir. 1997); <u>Edwards v. Sullivan</u>, 937 F.2d 580, 583 (11th Cir. 1991); <u>Sabo v. Chater</u>, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527(d). "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a

contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citation omitted). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See* Edwards, 937 F.2d 580 (finding that the ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements). However, if a treating physician's opinion on the nature and severity of a claimant's impairments is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2).

When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; and 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). Generally, a treating physician's opinion is entitled to more weight than a consulting physician's opinion. *See* Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether Plaintiff meets a listed impairment, a claimant's RFC (*see* 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors, because those ultimate determinations are the province of the Commissioner. 20 C.F.R. § 404.1527(e).

Here, in rejecting Dr. Rohan's opinion of total disability, the ALJ noted, correctly, that this opinion concerns a determination that is the province of the Commissioner (tr. 16). The ALJ also pointed to the conclusory nature of Dr. Rohan's opinion. More specifically, the ALJ noted that Dr.

Rohan failed to explain why Plaintiff could not work by, for example, listing the limitations that precluded work (*id.*). Instead of explaining his opinion, the ALJ stated, Dr. Rohan merely opined that Plaintiff is "100 percent disabled" after he "subjectively accept[ed]" Plaintiff's "reports that she hurts and cannot work" (*id.*). Continuing, the ALJ found that Dr. Rohan's opinion is inconsistent with the overall evidence of record (*id.*). In support, the ALJ pointed to various portions of the record, including the following evidence: (1) the opinions of Dr. Crawford, a treating physician and colleague of Dr. Rohan at Spinal Associates, that Plaintiff could return to her work as a pharmacy technician and should engage in physical activity[12]; (2) Dr. Shores' finding of inconsistencies upon his examination of Plaintiff and his diagnosis of symptom magnification; (3) Dr. Beecham's opinion that Plaintiff could perform work at a light exertional level; (4) the efficacy of the injections (as reported by Plaintiff) and Plaintiff's improvement with PT; (5) Dr. Joseph's essentially benign examination in October 2010; (6) the treatment notes from Plaintiff's last documented office visit (in November 2010), which reflect *(a)* Dr. Joseph's opinions/statements that Plaintiff has a "fixable problem," she will not consider using a spinal cord stimulator, and she has not exercised as instructed, and *(b)* Plaintiff's report that she wanted to go to work and would do so even if involved cleaning toilets[13]; and (7) Plaintiff was able to go without pain medication on several occasions for extended periods (and, while not directly noted by the ALJ, the record also reflects that Plaintiff went without regular, ongoing treatment at various intervals during the relevant time frame, including during a large part of 2007 and after November 2010) (*see* tr. 15–17).

As can be seen, the ALJ clearly articulated his reasons for rejecting Dr. Rohan's opinion of total disability. Moreover, the reasons he stated are supported by substantial record evidence. Plaintiff, therefore, is not entitled to relief on this ground.

---

[12] Dr. Stringer also released Plaintiff to work.

[13] As discussed *infra*, in finding Plaintiff less than fully credible, the ALJ relied on many of the same reasons he relied on in discounting the opinions of Dr. Rohan, and those reasons need not be repeated in the next section of this Report. Thus, the undersigned notes here that Plaintiff's desire to return to work is inconsistent with disability and indicates that she did not view her pain as disabling, despite her claims of disabling pain. *See* Bentley v. Shalala, 52 F.3d 784, 786 (8th Cir. 1995); Barrett v. Shalala, 38 F.3d 1019, 1024 (8th Cir. 1994) (claimant's statements that he was seeking work are inconsistent with disability). Although Plaintiff testified that she did not tell Dr. Joseph she would return to work even if involved cleaning toilets, Dr. Joseph's treatment notes refute Plaintiff's testimony. As detailed *supra*, Dr. Joseph's treatment notes clearly and unequivocally document Plaintiff's statement and include his own opinions about the statement, all of which undermines Plaintiff's testimony and, correspondingly, her credibility.

B.     Plaintiff's Credibility

As previously discussed, Plaintiff testified that she is extraordinarily limited by pain and unable to do much of anything.  The ALJ concluded that her complaints are not fully credible.  More specifically, the ALJ found that Plaintiff's DDD could reasonably be expected to cause some pain and limitations, but Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [RFC]" (tr. 15). Plaintiff contends the ALJ erred in making this finding, but she does so merely by reciting her testimony (doc. 18 at 3–4) and the medical evidence of record (*id.* at 5–7).  Plaintiff makes no legal argument and apparently seeks reversal on this claim based only on Plaintiff's testimony and the evidence she has identified but, as this court is well aware, such is not the standard for relief.

In <u>Holt v. Sullivan</u>, 921 F.2d 1221, 1223 (11th Cir. 1991), the Eleventh Circuit articulated the "pain standard," which applies when a disability claimant attempts to establish a disability through his own testimony of pain or other subjective symptoms.  The pain standard requires:  (1) evidence of an underlying medical condition and either (a) objective medical evidence that confirms the severity of the alleged pain arising from that condition, or (b) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.  <u>Holt</u>, 921 F.2d at 1223 (internal citation omitted).  If a claimant testifies as to her subjective complaints of disabling pain and other symptoms, as Plaintiff did here, the ALJ must clearly "articulate explicit and adequate reasons" for discrediting the claimant's allegations of completely disabling symptoms.  <u>Foote</u>, 67 F.3d at 1561–62.  Additionally, "'[a]lthough this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court.'"  *Id.* at 1562 (quoting <u>Tieniber v. Heckler</u>, 720 F.2d 1251, 1255 (11th Cir. 1983)).  The credibility determination does not need to cite "'particular phrases or formulations'" but it cannot merely be a broad rejection which is "'not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole.'"  *Id.* (quoting <u>Jamison v. Bowen</u>, 814 F.2d 585, 588–90 (11th Cir. 1987)).

Here, the ALJ identified the correct pain standard (*see* tr. 14).  Then, in discounting Plaintiff's subjective complaints, he first noted that Plaintiff returned to work in 2007 as pharmacy technician (tr. 15).  *See* 20 C.F.R. § 404.1571 (work performed during any period in which Plaintiff alleges that she was under a disability may demonstrate an ability to perform substantial gainful

activity); Harris v. Barnhart, 356 F.3d 926, 930 (8th Cir. 2004) ("it was also not unreasonable for the ALJ to note that Harris's . . . part-time work [was] inconsistent with her claim of disabling pain"). Next, the ALJ noted that although Plaintiff improved with PT, she was discharged due to inconsistent attendance (tr. 15). *See* 20 C.F.R. § 404.1530 ("Failure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits."); *see also* Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988) ("A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling.") (citation omitted). The ALJ then discussed his reasons for discounting Dr. Rohan's opinion of total disability, which reasons equally support his decision to find Plaintiff less than fully credible (*see* tr. 15–17), as the ALJ noted (*see, e.g.*, tr. 17 (Plaintiff "has been able to go without pain medication on several occasions for extended periods, indicating that the severity of her condition is less than she is alleging")).

Because the ALJ clearly articulated his reasons for finding Plaintiff less than fully credible, and the reasons cited are substantially supported by the record, Plaintiff is not entitled to relief. *See* Foote, 67 F.3d at 1562 (a clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court); MacGregor, 786 F.2d at 1054 (same).

C.      The RFC Determination

The ALJ found that Plaintiff has the RFC to perform the full range of light work (and therefore can return to the past relevant work she performed at that level of exertion). Although Plaintiff contests this finding, she had not explained how the ALJ committed error in determining her RFC (she merely recites her testimony and the medical evidence of record). Despite Plaintiff's failure to develop this argument, the court has carefully considered the record and finds no error.

Residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite her impairments. *See* Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). As stated in 20 C.F.R. § 404.1545(a), it is the most a claimant can still do despite her limitations. "It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC." Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). Although the RFC determination is a medical question, it is not based only on "medical" evidence, that is, evidence from medical reports or sources; rather, an ALJ has the duty, at step four, to assess

RFC on the basis of all the relevant, credible evidence of record.  *See* <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1238 (11th Cir. 2004); <u>McKinney v. Apfel</u>, 228 F.3d 860, 863 (8th Cir. 2000) (the Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations); <u>Dykes v. Apfel</u>, 223 F.3d 865, 866-67 (8th Cir. 2000) (per curiam) (RFC is a determination based upon all the record evidence, but the record must include some medical evidence that supports the RFC finding).  *See also* 20 C.F.R. § 404.1545; Social Security Ruling (SSR) 96-8p.

Here, the ALJ complied with his duty to assess the RFC based on all the relevant, *credible* evidence of record.  He thoroughly summarized Plaintiff's testimony and the medical evidence, and after properly discounting Dr. Rohan's opinion and Plaintiff's complaints of extreme and disabling limitations, he determined Plaintiff's RFC.  *See* <u>McSwain v. Bowen</u>, 814 F.2d 617, 620 n.1 (11th Cir. 1987) (an ALJ need not include in the RFC limitations, restrictions, or opinions he has properly rejected or that are otherwise unsupported by the record).  In relevant part, the ALJ considered the opinions of Dr. Crawford; the results of Plaintiff's physical examinations; Dr. Shores' finding—after examining Plaintiff—that Plaintiff exaggerated her symptoms; the opinions of Dr. Beecham, which are wholly consistent with the RFC (as are those of the other, non-examining agency specialist); and Plaintiff's ability to work as pharmacy technician after the alleged onset date, which work she performed at the light exertional level, as well as her stated desire to work cleaning toilets during the relevant time frame, which work would obviously require capacities beyond those set forth in Plaintiff's RFC (tr. 15–17).

Plaintiff had pointed to no error in the ALJ's reasoning and findings, and the undersigned has found none.  To be sure, the undersigned easily concludes that the RFC is supported by substantial evidence on the record as a whole, and that no ground for reversal exits.

For the foregoing reasons, the Commissioner's decision is supported by substantial evidence and should not be disturbed.  42 U.S.C. § 405(g); <u>Lewis</u>, 125 F. 3d at 1439; <u>Foote</u>, 67 F.3d at 1560.  Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making his findings, or that any other ground for reversal exists.

Accordingly, it is respectfully **RECOMMENDED**:

That the decision of the Commissioner be **AFFIRMED**, that this action be **DISMISSED,** and that the clerk be directed to close the file.

At Pensacola, Florida this 5<u>th</u> day of November 2013.


<u>/s/ Elizabeth M. Timothy</u>
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**



<u>**NOTICE TO THE PARTIES**</u>

**Any objections to these proposed recommendations must be filed within fourteen (14) days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**